## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| John Raines and Tim McGough, as Trustees of the Carpenters & Joiners Welfare Fund, Twin City Carpenters Pension Master Trust Fund, and Twin City Carpenters Vacation Fund; John Raines as Trustee of the Carpenters and Joiners Apprenticeship and Journeymen Training Trust Fund, and each of their successors,<br><br>        Plaintiffs,<br><br>v.<br><br>Dow Acoustics, Inc.,<br><br>        Defendant. | Civil No. 16-2624 (DWF/LIB)<br><br><br><br><br><br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

Amanda R. Cefalu, Esq., and Bryan J. Morben, Esq., Kutak Rock, counsel for Plaintiffs.

Mark S. Mathison, Esq., Meghann F. Kantke, Esq., and Tara Craft Adams, Esq., Gray Plant Mooty, counsel for Defendant.

## INTRODUCTION

The plaintiffs in this case filed suit to recover unpaid fringe benefit contributions from the defendant. This matter is before the Court on the plaintiffs' motion for summary judgment. For the reasons discussed below, the Court denies the plaintiffs' motion.

## BACKGROUND

Plaintiffs are trustees over various fringe benefit funds (the "Trustees"). Plaintiffs filed suit against Defendant Dow Acoustics, Inc., alleging that Dow failed to make the required contributions for its employees' fringe benefits pursuant to certain collective bargaining agreements. Dow contends that it never agreed to the CBAs.

In 1979, David Wood started Dow, which installs acoustic ceilings and wall panels. (Doc. No. 28 ("Adams Decl.") ¶ 2, Ex. 1 ("David Wood Dep.") at 6.) Dow was a nonunion company. (*Id.* at 7.) But around 2003, one of Dow's general contractors required Dow to join a union to continue working on a project. (*Id.* at 8.) David Wood then approached one of his employees about joining the union to continue the job. (*Id.* at 9.) Dow apparently agreed with the union to have one person join the union who would work on all of Dow's union jobs. (*Id.* at 10.) David Wood signed a one-page Acceptance of Agreement and a one-page Independent Contractor Work Sheet. (Adams Decl. ¶ 3, Ex. 2.) The Acceptance of Agreement provided that Dow agreed to be bound by a CBA and that Dow had received a copy of the CBA. The Independent Contractor Work Sheet identifies the project for which the CBA applied. According to David Wood, despite agreeing to the contrary, the union never gave him the CBA. (David Wood Dep. at 12.) In 2004, Dow signed identical contracts for two more projects. (Adams Decl. ¶¶ 4-5, Exs. 3 & 4.)

In 2006, Jim Wood, David's son, bought Dow. (Doc. No. 25 ("Cefalu Aff.") ¶ 2, Ex.1 ("Jim Wood Dep.") at 22.) According to Jim Wood, the union's business agent, Mike Harrom, would come by once or twice a year to get Dow to join the union. (Jim

2

Wood Dep. at 32-34.)  Harrom disputes this and states that he was trying to convince Dow to join unions in other states where Dow did business.  (Cefalu Aff. ¶ 3, Ex. 2 ("Harrom Dep.") at 52-53.)  Jim Wood stated that he was always clear with Harrom that Dow could not join the union.  (Jim Wood Dep. at 33.)

Despite the apparent misunderstanding, Dow would sign Acceptance of Agreements each year, which included provisions stating that Dow agreed to the terms of the CBA and that Dow received a copy of the CBA.  (*See* Jim Wood Dep. at 115-17; Cefalu Aff. ¶¶ 5-7, Exs. 4-7.)  Jim Wood contends that Harrom explained that the Acceptance of Agreements would continue the agreement that only a few Dow employees would be union members.  (Jim Wood Dep. at 115-17.)  Both David Wood and Jim Wood testified that they never received a copy of the CBA, despite signing an agreement stating the opposite.  (*Id.* 113-14; David Wood Dep. at 12.)

As relevant here, Dow signed Acceptance of Agreements for 2012, 2013, and 2014.  (Cefalu Aff. ¶¶ 5-7, Exs. 4-7.)  Unlike the 2003 and 2004 Acceptance of Agreements, however, the agreements for 2012 through 2014, did not include an Independent Contractor Work Sheet identifying the projects for which the CBAs applied.  (*See id.*)  For the 2012 agreement, Plaintiffs could not produce evidence that Dow was given the entire CBA, but Harrom testified that his usual practice was either to send a contract early or to leave one.  (Harrom Dep. at 106-07.)  For the 2013 agreement, Plaintiffs produced a letter sent to Dow with a copy of the CBA.  (Doc. No. 35 ("Morben Aff.") ¶ 1, Ex. 2.)  But the 2013 agreement was intercepted by Dow's office manager, who apparently never showed the CBA to Jim Wood and forged his signature on the

3

agreement. (Jim Wood Dep. at 38-40.) For the 2014 agreement, Harrom testified that he left a full CBA with Dow (Harrom Dep. at 98-99), but Jim Wood testified that he never received one. (Jim Wood Dep. at 113-14.)

In 2015, the fund's third-party administrator discovered that Dow had not been paying for fringe benefits for all of its employees for 2012 through 2014. On August 4, 2016, the Trustees filed suit and now move the Court for summary judgment.[1]

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna*

---

[1] The Court cites to Plaintiffs' Memorandum in Support of the Motion for Summary Judgment (Doc. No. 24) as "Pls.' Memo."; Defendant's Opposition Brief (Doc. No. 27) as "D.'s Opp."; and Plaintiffs' Reply Brief (Doc. No. 32) as "Pls.' Reply."

4

*Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Trustees moved for summary judgment seeking to recover unpaid contributions, liquidated damages, and attorney fees and costs. Dow argues that summary judgment is inappropriate because: (1) genuine issues of material fact remain regarding whether the CBAs are void ab initio due to fraud in the execution of the agreements; and (2) Plaintiffs have failed to prove the amount owed.[2]

## II.     Fraud in the Execution

Dow's contributions are covered by ERISA. Section 515 of ERISA governs claims concerning nonpayment of fund contributions. *Bigham v. R&S Heating & Air Conditioning, Inc.*, 182 F. Supp. 3d 919, 923 (D. Minn. 2016). The Eighth Circuit has explained that § 515 is intended to "simplify actions to collect delinquent contributions, avoid costly litigation, and enhance the actuarial planning necessary to the administration

---

[2] Dow contends that the Trustees are seeking contribution for two individuals who worked for Dow as independent contractors. In their reply, the Trustees accepted that Dow did not owe contributions for those two individuals and amended the damages calculation. (Pls.' Reply at 24.) Because the Court concludes that material fact issues exist precluding summary judgment, the Court declines to address Dow's argument regarding damages. The parties can address this issue to the extent that it remains through a motion in limine.

5

of multiemployer pension plans." *Cent. States, SE & SW Areas Pension Fund v. Indep. Fruit & Produce Co.*, 919 F.2d 1343, 1348 (8th Cir.1990). Section 515 places "pension fund[s] in a better position than that which [they] would otherwise occupy in relation to the collective bargaining agreement" by eliminating certain "contract defenses--for example, fraud in the inducement, oral side agreements or course of performance." *Id.* "[S]ection 515 means that . . . suit [by a trustee] cannot be thwarted by defenses not apparent from the face of the Agreement." *Id.* at 1349 (quoting *Bituminous Coal Operators' Ass'n v. Connors*, 867 F.2d 625, 634 (D.C. Cir.1989)). Thus, "courts recognize only two defenses to a collection action: that the pension contributions are themselves illegal or that the collective bargaining agreement is void." *Id.*

Fraud in the execution is a valid defense under § 515 and renders the agreement void ab initio. *Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 780 (7th Cir. 2002). "Fraud in the execution occurs where there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party signs without knowing or having a 'reasonable opportunity to know of its character or essential terms.'" *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 31 (2d Cir. 1997) (quoting Restatement (Second) of Contracts § 163 cmt. a (1981)); *see also A & C Envtl., Inc.*, 301 F.3d at 780 ("In order to establish the defense of fraud in the execution, A & C had to prove that it did not know that it was signing a collective bargaining agreement that obligated it to make contributions to the Funds and that its ignorance was excusable because it had reasonably relied upon the representations of the union representative.").

6

Dow argues that Harrom misrepresented the scope of the CBAs and that Harrom denied Dow the opportunity to review the CBAs. In *Hetchkop*, the Second Circuit reversed the lower court's grant of summary judgment because fact issues existed regarding the employer's fraud-in-the-execution defense. 116 F.3d at 33. The union in *Hetchkop* agreed to a limited CBA and then switched the contract for a full CBA while the employer looked away. *Id.* at 29-30. The court of appeals determined that a factfinder could find that the employer in *Hetchkop* did not have a reasonable opportunity to review the document. *Id.* at 34. Here, the Court concludes that, interpreting the facts in the light most favorable to Dow, a reasonable factfinder could find that Dow did not have a reasonable opportunity to review the contract given Harrom's alleged misrepresentations regarding the scope of the agreement and the fact that Jim Wood was not given a copy of the CBA. *See Local 49 Operating Eng'rs Health & Welfare Fund v. Flueger Const. Co.*, Civ. No. 03-2798, 2004 WL 2066849, at *3 (D. Minn. Aug. 18, 2004) (denying summary judgment when employer did not understand the nature of the agreement with the union due to misrepresentations).

The Trustee's arguments to the contrary are unpersuasive. The Trustees argue that no genuine issue of fact exists regarding whether Dow had a reasonable opportunity to review the CBA. The Trustees rely on *T.E.A.M. Scaffolding Systems, Inc. v. United Brotherhood of Carpenters & Joiners of America*, where the Eighth Circuit affirmed the district court's rejection of the fraud-in-the-execution defense after a bench trial. 29 F. App'x 414, 416 (8th Cir. 2002). But in that case the employer was given the CBA and just did not read the terms. *Id.* Here, fact issues remain regarding whether Dow

7

received the CBAs and had a reasonable opportunity to review them.  Thus, the Court concludes that Plaintiffs' motion for summary judgment should be denied.[3]

Plaintiffs also point to the fact that Dow affirmatively agreed that it had received a copy of the CBA and had agreed to the terms.  But issues of fact remain regarding whether Dow actually received the CBA.  Indeed, Harrom admits that he can recall giving Dow a copy of the CBA only in 2014.  (Harrom Dep. at 98-99.)  While it may be the case that Dow's failure to learn the terms of the CBA was unreasonable, a factfinder must make such a determination.  Thus, the Court declines to grant summary judgment.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that the Trustee's Motion for Summary Judgment (Doc. No. [22]) is **DENIED**.

Dated:  February 9, 2018                s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge

---

[3]     Plaintiffs also cite to *Central States, Southeast. & Southwest. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148 (7th Cir. 1989), in which Judge Easterbrook concluded that a side agreement with the union to have only a few employees join the union could not override a clear CBA, which required contributions for all employees. *Id.* at 1151.  Here, in contrast, the union did not enter into a side agreement, but instead misrepresented the scope of the CBA.  Courts in this District have distinguished similar facts from *Gerber*.  *See Flueger Const. Co.*, 2004 WL 2066849, at *3 (concluding that a side agreement to maintain the status quo could not defeat the clear language of the CBA, but that the CBA may be void based on the union representative's misrepresentations about the scope of the agreement).  Thus, the Court concludes summary judgment is inappropriate.